IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, for the use of MIDSOUTH PAVING, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 2:22cv314-MHT (WO) |
| PROVISION CONTRACTING SERVICES, LLC, as Obligor, and NICHOLAS DOWDELL, as Guarantor, | ) ) ) ) ) | |
| Defendants. | ) ) | |

OPINION

Plaintiff United States of America, for the use of

Midsouth Paving, Inc. filed this case against

defendants Provision Contracting Services, Inc. and

Nicholas Dowdell asserting claims of breach of

contract, account stated, and quantum meruit.[1]

Jurisdiction is proper under 40 U.S.C. § 3133(b).  The

court previously entered default against Provision at

---

1. Midsouth's complaint also stated a claim on
payment bond against defendant United States Fire
Insurance Company, which was settled by those parties
and dismissed with prejudice.  *See* Judgment (Doc. 28).

the request of Midsouth.  This cause is now before the court on Midsouth's motion for entry of default judgment against Provision in the amount of $ 406,431.78.  For the following reasons, the motion will be granted.

### I.

First, the motion will be granted because Provision, a limited liability company, has failed to obtain counsel as ordered by the court after being given a reasonable opportunity to do so.  As the court explained in its March 23, 2023 order (Doc. 30), because limited liability companies are "artificial entities," they may not appear in federal court otherwise than through a licensed attorney.  *See United States v. Hagerman*, 549 F.3d 536, 537 (7th Cir. 2008) ("a limited liability company ..., like a corporation, cannot litigate in a federal court unless it is represented by a lawyer"); *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) ("a limited liability company ... may appear in federal court only through a

2

licensed attorney"). "[W]hen a litigant not entitled to litigate pro se loses its lawyer in the midst of the case[, the court should] give it a reasonable opportunity to find a new one." *Hagerman*, 549 F.3d at 538 (citations omitted). As the court noted in its prior order, "If the litigant does not find new counsel, the court may then dismiss the case when the litigant is a plaintiff or may enter a default judgment against the litigant when it is a defendant." Order (Doc. 30) at 3 (citing *Hagerman*, 549 F.3d at 538).

In its March 23 order, the court gave Provision a reasonable opportunity—until May 22, 2023—to obtain new counsel and have said counsel file a notice of appearance, and warned said defendant that if it failed to do so, Midsouth could file a motion for default judgment against it. That deadline has long since passed without Provision appearing through counsel. Afterwards, Midsouth applied for entry of default against Provision, and default was entered. Midsouth

3

then timely filed the motion for default judgment against Provision.

As the court previously explained, "The policy reasons for allowing default judgments are basically the same now as they were in the early days of English and American practice." § 2681 History and Policy of Default Judgments, 10A Fed. Prac. & Proc. Civ. § 2681 (4th ed.) (2016). "[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Id.* (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). As a result, "a party who has filed a responsive pleading or otherwise defended still may be found in default for noncompliance with the rules at some later point in the action." § 2682 Entry of Default Under Rule 55(a), 10A Fed. Prac. & Proc. Civ. § 2682 (4th ed.) (2016). And,

4

as the Third Circuit Court of Appeals has explained, a district court has the discretion to "impose[] a default judgment against the defendants for failure to comply with its own unambiguous orders to obtain substitute counsel." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 918 (3d Cir. 1992).

Such is the case here. The court issued an unambiguous order to obtain counsel which Provision has ignored. The court will grant a default judgment for failure to comply with its order. Still, the court must assure itself that the amount requested in the motion for default judgment is appropriate before granting the requested relief.

## II.

"[A] default is not 'an absolute confession by the defendant of his liability and of the plaintiff's right to recover,' but is instead merely 'an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability.'" *Capitol Records v. Rita Carmichael*, 508 F.

Supp. 2d 1079, 1083 (S.D. Ala. 2007) (Steele, J.) (citations omitted).  A default judgment, including the specific nature and extent of the relief sought, must be adequately supported in the record.  *See*, *e.g.*, *Boswell v. Gumbaytay*, No. 2:07-CV-135-WKW, 2009 WL 1515912, at *8 (M.D. Ala. June 1, 2009) (Watkins, J.) (in entering a default judgment, the court's "core duty is 'to assure [itself] that there is a legitimate basis for any damage award it enters'") (quoting *Anheuser–Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003)).  "Besides the pleadings, a court may also consider evidence presented in the form of an affidavit or declaration." *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011) (Thrash, J.) (citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 111 (6th Cir. 1995) ("Use of affidavits in granting default judgments does not violate ... due process[.]"); *Super Stop No. 701, Inc. v. BP Prods. N. Am. Inc.*, No. 08-61389-CIV, 2009 WL 5068532, at *2 n. 4. (S.D. Fla. Dec. 17, 2009) (Cohn, J.)).

6

Provision seeks a default judgment in the amount of $ 406,431.78. The well-pleaded factual allegations of the complaint and the affidavit of Kay Boosa submitted by Midsouth in support of the motion for default judgment (Doc. 32-1) provide adequate evidentiary support for the requested amount.

The complaint and affidavit establish the following facts. On or about December 17, 2020, Midsouth and Provision entered into a subcontract agreement whereby Midsouth agreed to provide labor and/or materials to repair roads at Maxwell Air Force Base. On or about June 4, 2020, Midsouth, Provision, and Dowdell entered into a credit agreement with a personal guarantee. Pursuant to the agreement, (a) Midsouth agreed to provide labor and/or materials to Provision on an open credit account; (b) Provision agreed to pay finance charges to Midsouth for any past-due invoices and to pay Midsouth's reasonable attorneys' fees and other legal expenses in case of default; and (c) Dowdell

personally guaranteed Provision's obligations under the contract.

Midsouth finished all work requested by Provision under the agreement on or about November 11, 2021, and submitted to Provision all of the applications and other documents required to receive payment. Provision has failed to pay Midsouth's invoices as they have come due and has failed to pay the amounts due under the agreement. Based on these facts, the court finds that Provision breached the subcontract agreement and the credit agreement.

At the time the lawsuit was filed, the total principal balance owed was $ 768,515.33. (This amount has since been paid by another party.) Under the credit agreement, a monthly finance charge of 1.5 % for past-due accounts applies. "The total amount of finance charges incurred as a result of the past due balance, up until the point at which said balance was paid by another party, was $ 161,388.22; after crediting payments by another party, the total amount of finance

8

charges owed on this account is $114,903.55." Aff. of Kay Boosa (Doc. 32-1) at 1-2. Thus, Provision will be ordered to pay this amount to Midsouth.

Additionally, due to Provision's failure to pay, Midsouth hired a law firm for collection. The credit agreement provides that, should Provision default and Midsouth hire a lawyer to collect payment, Provision agrees to pay Midsouth "a reasonable attorney's fee of thirty-three percent (33 %) of the unpaid balance and interest from the date of the past due ... debt, plus any interest accrued to the date of judgment and costs of collection." Credit Agreement (Doc. 32-1 at 4). Midsouth requests attorneys' fees of $ 291,528.23 pursuant to this agreement, calculated by adding the unpaid principal balance owed of $ 768,515.33 plus the total finance charges owed of $ 114,903.55; the sum is then multiplied by 0.33 (33 %), which results in a fee amount of $ 291,528.23. The court finds that these attorneys' fees are reasonable and due from Provision as a result of its default under the credit agreement.

9

Adding the finance charges owed of $ 114,903.55 and the $ 291,528.23 in attorneys' fees, the total comes to $ 406,431.78.   Midsouth will be granted default judgment in that amount, plus court costs.

An appropriate judgment will be entered.

DONE, this the 2nd day of January, 2024.

 /s/ Myron H. Thompson 
UNITED STATES DISTRICT JUDGE